**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MALIBU MEDIA, LLC** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO.** |
| | § | **4:16-CV-02319** |
| | § | |
| **JENNA HOWARD,** | § | |
| | § | |
| **DEFENDANT.** | § | |

**DEFENDANT JENNA HOWARD'S MOTION FOR PROTECTIVE ORDER FROM**
**PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS**

**I.     Summary of Argument**

Defendant Jenna Howard ("Ms. Howard") requests that this Court protect her from the burdensome and harassing discovery requests from Plaintiff Malibu Media, LLC ("Malibu") because Malibu's own document production shows that the accusations they have levied against Howard cannot possibly be true. Malibu has accused Ms. Howard of downloading thirteen pornographic films using the file-sharing program BitTorrent. Malibu also produced two spreadsheets that suggest Ms. Howard made over *fifty-four thousand* downloads consisting of an estimated 27 terabytes of data over a four-year period, which is an average of 31 items every day for the last four years, and literally hundreds of items on certain days, including for example downloads of movies in the hundreds and in languages that Ms. Howard does not even speak. This leads to only two possible conclusions: first, either Ms. Howard's network was hacked, or second, Malibu's research is wrong.

The spreadsheets also show that Ms. Howard downloaded 31 items on her wedding day, and somehow managed to download an average of 22 items at her home IP address each day of her international honeymoon when she was overseas in the Bahamas. There is no credible

evidence to suggest Ms. Howard is the party responsible for these downloads. Ms. Howard asked Malibu to identify the devices used to download these movies by the devices' Media Access Control Addresses (each unit's "MAC address"), but Malibu could not do so.

Upon receiving the research done on Ms. Howard's behalf into the spreadsheets, opposing counsel asked for documents supporting the honeymoon dates so that he could present them to his client, and he was hopeful that the client would agree to dismiss the case. Instead, Malibu has doubled down and asked for even more intrusive information from Ms. Howard. Attached as Exhibits 1-3 are the emails reflecting these communications.

Specifically, despite Malibu's suggestion that it would non-suit Ms. Howard once provided with information verifying the dates of the international honeymoon, Malibu has decided to press forward, and has now served additional Interrogatories and Requests for the Production of Documents (the "Second Set"). The Court should enter a Protective Order preventing Malibu from obtaining discovery through this Second Set because this discovery is now only for the purpose of harassing and embarrassing Ms. Howard and with the insidious aim that Ms. Howard would rather settle this case than defend herself against these increasingly more intrusive requests.

## II.     Background

1.     This case concerns the alleged illegal downloading of copyright material owned by Malibu. Malibu is the producer behind the brand "X-Art", a series of pornographic videos that are available for download or purchase from the X-Art website.

2.     Jenna Howard Lytle[1] is a 29 year old consultant who lives in Houston, Texas. She has a full-time job, is married, and did not download these materials.

---

[1] She has since married and changed her last name, but because she has been used using her maiden name, the pleadings will refer to her by her maiden name.

3.      The first time Ms. Howard learned that she had allegedly downloaded the copyrighted material was when she was initially served in this suit.

4.      Plaintiff's Amended Complaint alleges Ms. Howard downloaded films with lurid, and frankly disgusting, titles listed in Exhibits A-C of Plaintiff's Amended Complaint. Ms. Howard will not repeat those titles here.

5.      The salacious allegations against Ms. Howard are humiliating for an adult, church-going, professional woman in this community. She is faced with a no-win choice; either she continues to defend herself from these allegations, or quietly settles with Malibu and pays to make the case go away.

### A.      Malibu has exhibited a pattern of intimidation in this case.

6.      Unfortunately for Ms. Howard, Malibu is unconcerned about her privacy or about whether it has a basis in accusing her of making illegal downloads.

7.      The act of monitoring and suing alleged downloaders is part of Malibu Media's business operations. There are numerous articles, blogs, and complaints about Malibu's approach. *See,* Ex. 4, page 1 of search results for "Malibu Media litigation".

8.      In the Southern District of Texas alone, Malibu Media has over twenty identical cases. Ex. 5, PACER.gov search results for Malibu litigation in the Southern District of Texas.

9.      Malibu followed up its suit in this case with an explicit threat that the case will not be dismissed and with an immediate eye toward settlement. An unsolicited email was sent by Malibu through its counsel and is attached herewith as Exhibit 6.

10.     Then, faced with a deadline to designate an expert, Malibu failed to timely do so, and the undersigned agreed to an extension to do same. As a part of the discussions to extend the

deadline, Malibu dangled the prospect of this matter being dismissed. Ex. 6, email from Andrew Kumar to Mukul Kelkar, dated May 19, 2017.

11.      After the undersigned represented they were unopposed to an extension to designate experts, Malibu then changed course and explained they in fact were opposed to dismissal. Ex. 3, email from Andrew Kumar to Mukul Kelkar, dated May 22, 2017.

12.      Malibu then served its Second Set two days later. Ex. 8, email from Andrew Kumar to Mukul Kelkar, dated May 24, 2017, attaching its Second Set of Discovery requests.

## B.     Malibu's own evidence eviscerates its claim.

13.      Meanwhile, Malibu produced additional discovery, unsolicited, in the hopes that it would spur Ms. Howard to settle. Malibu produced two spreadsheets (the "Spreadsheets") "to aid in the resolution of this matter." Exs. 9-11, email from Andrew Kumar to Mukul Kelkar and Heather Khassian, dated May 4, 2017, and the two Spreadsheets. The email noted ONLY 27 items (and 2 duplicates) out of over 54,000 entries that allegedly line up with Ms. Howard and her husband's interests and activities, as suggested by their Facebook profiles. *Id.* When asked to produce those Facebook pages, Malibu refused. Ex. 12, Malibu Response to Howard's Request for Production of Documents. Notably, it is unclear what social media information has been relied on to determine Ms. Howard and her husband's interests.

14.      The Spreadsheets, however, tell a very different story. The Spreadsheets document over *fifty-four thousand* alleged downloads by Ms. Howard over a four-year stretch of time. The Spreadsheets suggest an impossible rate of downloads and mathematically disproves Malibu's claim that Ms. Howard downloaded all these materials. For instance, the following table captures the various times Howard would have downloaded over 150-plus items in a given day:

| Date | Number of Downloads |
|------|---------------------|
| 02/16/2016 | 631 |
| 02/11/2016 | 494 |
| 02/27/2016 | 399 |
| 02/22/2016 | 314 |
| 02/25/2016 | 293 |
| 03/18/2016 | 280 |
| 03/20/2016 | 248 |
| 02/18/2016 | 226 |
| 03/12/2016 | 217 |
| 02/28/2016 | 213 |
| 02/21/2016 | 213 |
| 08/29/2015 | 209 |
| 03/21/2016 | 206 |
| 12/03/2013 | 190 |
| 02/20/2016 | 183 |
| 03/19/2016 | 173 |
| 02/17/2016 | 162 |
| 02/19/2016 | 158 |
| 02/04/2016 | 158 |
| 12/13/2013 | 156 |
| 03/14/2016 | 152 |
| 12/25/2013 | 151 |

15.     Additionally, Ms. Howard got married on February 28, 2015, and then immediately went on her honeymoon, out of the country. Exs. 13 and 14, Jenna Howard's Certificate of Marriage and plane tickets showing Jenna Howard was on her honeymoon the week of March 1, 2015. Yet the Spreadsheets suggest that on the day of her wedding, Ms. Howard made 36 illegal downloads from her home address, and then made 28, 20, 25, 19, and 18 downloads from her home the days of her honeymoon.

16.     The math simply does not allow for this download rate. Ms. Howard would have had to download on average nearly 31 items every day for the past four years. And, on days like February 16, 2016, those 631 downloads would translate to one download every 2 minutes for the entire day.

5

17.     Even if Ms. Howard and additional unnamed parties made these downloads in parallel, the rate would be unsustainable. Ms. Howard is gainfully employed full-time and has held the same job for over 4 years. She is active in the community, regularly attending church and participating in various social groups through church. One would not be able to sustain a job, and regularly participate in outside activities while also maintaining the download rates as suggested by Malibu.

18.     Size limitation is another factor that shows that Ms. Howard cannot have downloaded the materials Malibu alleges. The downloads references by Malibu are sizeable downloads with significant data (e.g. movies). Assuming (conservatively) that each item averages 500 megabytes, then 54,000 items would come to over 27 terabytes of data. For point of reference, the U.S. Library of Congress "which is working with other libraries and archives from around the world to collect and preserve the web " adds 5 terabytes of data to its files each month.  See Ex. 14.

19.     There are additional irregularities. The Spreadsheets indicate Ms. Howard downloaded the film *Jurassic World* over seven times and the movie *The Avengers: Age of Ultron* thirty-six times.

20.     Of the 54,000-plus downloads, more than 100 of them are Indian "Bollywood" films in the Hindi language. Thirty films are in the language Tamil. Ms. Howard does not speak or understand Hindi or Tamil.

21.     The 30 downloads cited to by Malibu as relating to Ms. or Mr. Howard's interests, and thus allegedly evidencing that Ms. Howard was indeed the downloader of the pornographic materials represent 0.056% of all downloads allegedly done by Ms. Howard. For context, that is a hit rate of 1 out of every 1,800 downloads.

6

22.     Despite these long odds, scant evidence, refusal to produce any Facebook pages that allegedly show Ms. Howard and her husband's interests (which the Howards dispute), prior agreement to dismiss the case upon receipt of proof of wedding and honeymoon details, and failure to identify the MAC addresses of the devices used to carry out these downloads, Malibu continues to insist that additional discovery is appropriate.

### III.   Malibu's attempts to take additional discovery constitute harassment and Ms. Howard should not have to respond to these meritless claims.

23.     Malibu's records do not support the taking of additional discovery in this case. The Spreadsheets Malibu produced were designed to intimidate Ms. Howard into settlement. But they have had the opposite effect - they actually exonerate Ms. Howard. There is no way Ms. Howard (or her husband, who is not a named party) could have made those downloads:1) it is undisputed they got married and were on their honeymoon during a period of alleged downloads; 2) the amount of material downloaded is stunningly high for an individual; 3) the rate of downloads could not be sustained over the period shown in the Spreadsheets by a person who is gainfully employed in a full time job, active in her church, and with an active social network; 4) the downloads of large numbers of duplicate materials by an individual is nonsensical; and 5) a large number of the downloads do not align with Ms. Howard's interest or the language she speaks. Simply put, there is no credible way one person (who is a functioning member of society) could possibly download the terabytes[2] of data alleged in Malibu's production.

24.     "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending  . . ." FED. R. CIV. P. 26(c)(1). The Court has the authority to "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" from the discovery process. *Id.* The

---

[2] For reference, a standard Gmail account offers its end-user 15 gigabytes of storage space. The amount of data allegedly downloaded by Ms. Howard would be equal to 1,800 email accounts.

Court has the authority to forbid the taking of the discovery under these circumstances. FED. R. CIV. P. 26(c)(1)(A).

25.     In this case, Ms. Howard has clearly shown that the Second Set and the Subpoena sought by Malibu are harassing and for the purpose of seeking to extract a settlement payment for the sole purpose of avoiding intrusion into her life and the embarrassment caused by this suit. Malibu's own Spreadsheets eviscerate its position that its investigation is credible. There is no basis for which Malibu has the right to take discovery because its underlying claim is without merit.

26.     Accordingly, the Court should enter an order that prohibits Malibu from taking the discovery sought in its Second Set and should also forbid Malibu from obtaining Ms. Howard's AT&T internet download activity. The Court granted the AT&T subpoena before Ms. Howard's response was due. Based on the evidence attached to this motion, Ms. Howard is asking the Court to reconsider its ruling on the AT&T subpoena.

27.     This Motion for Protective Order meets the other technical requirements under the Rules. The parties have conferred on this issue as attested to in the Certificate of Conference below. FED. R. CIV. P. 26(c)(1). This Motion is also sought before Ms. Howard's responses would be due. *Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.*, 200 F.R.D. 255, 259 (M.D.N.C. 2001).

## IV.     Conclusion

28.     Ms. Howard understands and appreciates the need for discovery in legitimate cases. But the discovery produced by Malibu destroys any credibility it has to suggest that the alleged downloads came from Ms. Howard. Malibu's shoddy research simply does not support the implication that Ms. Howard illegally downloaded the pornographic movies that are the

subject to this suit, as well as an additional 54,000 other, unrelated, downloads. The supposed overlap between the downloads and Ms. Howard's interests is also not credible. Malibu peddles smut as a commercial enterprise, and is trying to strong-arm a settlement from Ms. Howard while threatening to link Ms. Howard as a purveyor of its pornographic product. This is textbook abuse of discovery, and the Court should not allow it. For these reasons, Ms. Howard respectfully requests that the Court enter an order protecting it from the Second Set, and that the Court reconsider and deny Malibu's request to obtain a subpoena from AT&T. Ms. Howard prays for any other relief to which it may be justly entitled.

Dated June 21, 2017.

Respectfully submitted,

**DENTONS US LLP**

By:  */s/ Glenn A. Ballard, Jr.*
    Glenn A. Ballard, Jr.
    Federal Bar No.: 825
    State Bar No.: 01650200
    glenn.ballard@dentons.com
    Mukul S. Kelkar
    Federal Bar No.: 1503770
    State Bar No.: 24063682
    mukul.kelkar@dentons.com

1221 McKinney Street, Suite 1900
Houston, Texas 77010-2006
Telephone: (713) 658-4600
Facsimile:  (713) 739-0834
**Attorneys for Defendant Jenna Howard**

103966445\V-2

## Certificate of Conference

I certify that on June 21, 2017 I attempted to confer with Andrew Kumar, counsel for Plaintiff, by telephone about this Motion for Protective Order, but was unable to reach him.

*/s/ Mukul Kelkar*
Mukul Kelkar

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing document was served on all parties of record on June 21, 2017 by ECF.

*/s/ Mukul Kelkar*
Mukul Kelkar

103966445\V-2